People of the State of Illinois v. Stephanie L. Appley. I would note this is a one-sided argument and limited to 15 minutes. Counsel, you may proceed. Good morning, Your Honors. May it please the Court, my name is Sunil Bhawe and I'm an Illinois Assistant Attorney General here on behalf of the people of the State of Illinois. At issue in this case is the termination of parental rights of the mother, Stephanie L. In Illinois, termination of parental rights proceedings move forward in a two-fold fashion. First, there must be a judicial determination of parental unfitness under Section 1D of the Illinois Adoption Act. If the State proves unfitness by clear and convincing evidence, the trial court moves on to Step 2, which is to examine a number of factors found in the Illinois Juvenile Court Act and determine whether it's in the best interest of the minor children to terminate the parental rights of the parent. In this case, the State alleged in its petition to terminate parental rights that the mother was unfit pursuant to Section 1DM subsection 3, which states that a parent is unfit if he or she fails to make reasonable progress towards the return of his or her children within any particular nine-month period. Here, the State alleged that the nine-month period within which the mother failed to make reasonable progress was February 1, 2007 to November 1, 2007. And the trial court found that the State proved its case by clear and convincing evidence. The appellate court for the Third District reversed, not on the ground that the parent, the mother, made reasonable progress towards the return of her child, but rather the appellate court took issue with the particular nine-month period that the State alleged in this case, because the mother was incarcerated from February 1, 2007 to August 3, 2007. And the appellate court held that the six-month period within which the mother was incarcerated told the nine-month mandate that the legislature required in Section 1DM subsection 3. Counsel, were there tasks that the mother could have done while she was in prison that could have contributed to making progress? Certainly there were. In fact, she did make some progress while she was in prison. She took an anger management class. She took eight parental training classes. She engaged in a pre-start program, which was intended to prepare her for life outside of prison. Did the court weigh that in terms of her progress? Certainly did. And when the court was giving its factual reasons for why the mother failed to make reasonable progress, it certainly laid out that she did engage in some conduct towards the goal of reunification with her children. However, she did not make reasonable progress within the entire nine-month period. And central to this case is whether the nine months that the mother had to demonstrate reasonable progress should include time spent incarcerated. We believe that the appellate court's decision has impermissibly rewritten the statute to import into it an exception that the legislature has never intended. Certainly by the plain language of the statute, Section 1DM subsection 3 does not state anywhere that incarcerated parents are to be treated differently than non-incarcerated parents. In fact, the legislature has referred to incarcerated parents in the context of judicial findings of unfitness in Section 1DR and Section 1DS, but notably includes no language regarding incarcerated parents in Section 1DM. And therefore, it's particularly inappropriate to imply into a statute an exception that the legislature has not expressly provided for. And as this court has stated, exhaustively discussed in In Re DF, that the primary purpose of the nine-month period in Section 1DM is to move termination of parental rights proceedings through the court system with dispatch in an expeditious and efficient manner so that children who come from abused or neglected homes, such as the children in this case, can find permanent placement of their children as soon as possible. And the appellate court's decision remanding this case and tolling the nine-month period frustrates that purpose of Section 1DM subsection 3. When one reads the appellate court's decision below, one might think that this is an issue of first impression in the state of Illinois, but certainly it's not. This issue is not new to the appellate courts. The First District, the Second District, and the Fourth District have all weighed in on this issue, and all three district appellate courts have held the time spent incarcerated counts towards the nine-month period. In fact, the Fourth District has aptly stated that one who engages in criminal conduct that results in incarceration should not be afforded immunity from demonstrating reasonable progress, that the legislature expects all parents, regardless of where they are physically located, to take reasonable steps towards reasonable progress towards a return and reunification. Counsel, if we were to take the appellate court's suggestion and tack on time for people who have been incarcerated, how would we handle a case of somebody who had been incarcerated for the whole nine-month period? That certainly is a valid question. This is one of the arguments that we make in our brief is that the appellate court's decision provides the trial court with an unclear framework on how to proceed. And in Ray D.L., this court instructed very clearly that only evidence within a particular nine-month period, the nine-month period alleged in the state's petition, is to be considered, that evidence. Here, the appellate court has remanded for further evidence without instructing the trial court as to how much, how many more months to give the mother. It would result in a completely unclear framework for trial courts to proceed on. And this court has already clearly outlined how these cases are supposed to proceed through the trial courts, that the nine-month period that the state alleges is the nine-month period that the trial court considers. And then whether the state proves its case by clear and convincing evidence, well, that's an issue that's dependent upon the evidence disclosed at the evidentiary hearing. But certainly, it's the state's discretion to choose whichever nine-month period it wants to choose if it believes that the evidence will disclose failure to make reasonable progress towards the return of the children. Counsel, if we agree with your statutory argument, I would note that the Respondent also argued in the appellate court that the trial court's unfitness finding and subsequent termination was against the manifest weight of the evidence. But because it found in favor of the Respondent on the statutory nine-month period issue, they never reached the manifest weight questions. Is it your position that we should remand to the appellate court to address those manifest weight questions or rely on the trial court record and deal with that here? It's our position that this court should rely on the trial court's record. It's a closed record. The evidence within the nine-month period has already been disclosed at the trial court hearing. And this court can review that evidence to determine whether the trial court's finding unfitness is counter to the manifest weight of the evidence. And we certainly believe that it is not. It is not so clearly evident that the trial court arrived at the wrong conclusion. Here, when the mother was released from prison, the three visitations that she had with her children were truly chaotic and haphazard and really a result of a failure to take her psychotropic medications to help her with her mental health problems, bipolar disorder. And it's not just a failure to take her psychotropic medications that concerns the trial court and the state. It's her outright refusal to seek mental health treatment. Mary Wynn and Nicole Friend were her caseworkers for Catholic Charity Services. And they offered her transportation. They offered her advocacy at the Illinois Human Service Center to gain mental health treatment so that she can take the reasonable steps to help her mental bipolar disorder so that she can take care of her children. And she outrightly refused that assistance. It's not just the failure to take her psychotropic medications that the trial court relied on. The trial court also ordered her to partake in a domestic violence class. A domestic violence class was offered to her while she was in prison. She did not take that class. She never took that class when she was out of prison. She was unable to find stable housing or employment during three months when she was out of prison. She had a romantic relationship with a male, Robert W., but she failed to disclose the identity of that man, even though she was ordered to do so by the circuit court. And while she was in prison, during that six-month period that was within the subset of the nine-month period, she engaged twice in disciplinary violations, once for trading and trafficking and once for unauthorized movement. Now, certainly engaging in disciplinary violations puts one at risk for losing good time, good conduct credits, which could further delay the release from prison. And this is the type of conduct that doesn't demonstrate reasonable movement towards reunification with children. In fact, it demonstrates regression away from reunification with children. So we believe that the evidence disclosed at the adjudicatory hearing shows, by clear and convincing evidence, that the mother failed to demonstrate reasonable progress towards a return with children within that particular nine-month period. So, as I had mentioned at the outset, the next step is to examine a number of factors found in the Illinois Juvenile Court Act and determine whether it is in the children's best interest to terminate the mother's parental rights. And we submit that the mother has conceded this issue on page seven of her brief, where she states that if the finding on fitness is affirmed, then it is in the best interest of the children to terminate her parental rights. Certainly the overwhelming evidence here is that the termination of parental rights was proper. The mother displayed suicidal and homicidal tendencies. The children have been in a loving, stable home with their foster parents now for some time. They have had limited contact with the mother, in fact, no contact with the mother since March of 2008. So we believe that... One of the children is ill? One of the children is or has been ill, is that correct? All three children were, had high lead levels in their bodies prior to the removal from the mother's custody. The youngest child, J.L., suffers from a number of medical conditions. Yes, he has trachomalacia, which is a closing of the esophagus, and she has severe club feet, among a number of other medical conditions. And the mother was unable to handle J.L.'s delicate medical conditions, mainly because she herself suffered from severe mental problems, bipolar disorder, and she refused to treat that condition. You indicated early in your argument, I believe, that the state has absolute discretion on picking what nine-month period it's going to use for determining the issue of unfitness. Does the respondent, does the mother in these cases, have any objection, opportunity at that point to object if, in fact, the person is in jail? The mother does not, not under the statutory scheme. The mother, however, can argue at the adjudicatory hearing, based on the evidence disclosed at the adjudicatory hearing, that she is making reasonable progress. Or I should actually state that the state failed to prove that she failed to make reasonable progress. But under the statutory scheme, under the plain language of the statute, the nine-month period can be any nine-month period after the initial nine-month period of the finding of adjudication of neglect or abuse. And that's total discretion. The statute uses the word any. So the mother would have no right to object, as a number of appellate court decisions have also held. If there are no further questions, Your Honors, we do respectfully request that the judgment of the appellate court be reversed and that the trial court's final judgments terminating the mother's parental rights be affirmed. Thank you. Thank you, counsel. Case number 108-575 will be taken under advisement as agenda number 12.